**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**

**CASE NO. 19-61017-CIV-ALTMAN**

**JODI JACOBS**,

     *Plaintiff*,

*v.*

**MID-CONTINENT CASUALTY**
**COMPANY**,

     *Defendant.*

_____/

**ORDER**

     Under Florida law, a plaintiff who settles with an insured defendant—and then sues the defendant's insurer for indemnification—must prove that the settled claims were covered by the insurance policy. And, if the settlement agreement includes some claims that are covered by the insurance policy and some that aren't, then the plaintiff must allocate the total damages as between the covered and uncovered claims. Otherwise, in the later suit against the insurer, the plaintiff would be asking for money for claims that weren't covered by the policy—a result the law understandably forbids. One more thing: Florida law is clear that the burden of establishing this allocation (as between covered and uncovered claims) falls on the plaintiff—and that the plaintiff's failure to allocate entitles the insurer in the later suit to summary judgment.

     Our Plaintiff, Jodi Jacobs, sued two defendants in state court, alleging that their negligence caused her husband's injuries. When their general liability insurer, Mid-Continent Casualty Company ("MCC"), refused to defend the lawsuit, she settled with both state-court defendants. That settlement gave Mrs. Jacobs a consent judgment of $450,000 and an assignment of the state-court defendants' claims against MCC. With that assignment in hand, she brought this lawsuit against MCC for the entire $450,000. But, while Mrs. Jacobs contends that her claims in the underlying case (as against one of the

defendants) were covered by the general liability policy, she admits that the two claims against the other defendant weren't. And she concedes—as she must—that the state-court settlement agreement didn't allocate the $450,000 between the covered and uncovered claims. Nor is there any evidence in the record from which a reasonable jury could calculate the proper allocation. Given the clarity of Florida law on this dispositive question, we **GRANT** MCC's Amended Motion for Final Summary Judgment and Incorporated Memorandum of Law ("Def.'s MSJ") [ECF No. 56].

## BACKGROUND

Mrs. Jacobs—the representative of the Estate of her husband, Barry Jacobs—sued Vesta Construction Inc. and its president, Mark Zekofsky, in Florida state court. *See* Amended Joint Statement of Material Facts ("Joint SOMF") [ECF No. 54] ¶¶ 3, 8; *see also* Underlying Complaint [ECF No. 54-2]. In her Underlying Complaint, she alleged that Vesta was the general contractor on a construction project and that it subcontracted the work to Richard Cornelia, individually or d/b/a A.R.C. Builders ("Cornelia"), which turned out to be an unregistered and fictitious name. *See* Joint SOMF ¶¶ 5–6. Neither Vesta nor Cornelia maintained workers'-compensation insurance as required by Florida law. *Id.* ¶ 9. Cornelia nonetheless employed Barry Jacobs and "stationed him" on the roof of the construction project. *Id.* ¶ 7. While at work, Mr. Jacobs fell from the roof and suffered serious bodily injury. *Id.* ¶¶ 10–12.

The Underlying Complaint asserted two claims. In Count I ("Claim for Damages as Employee Against Vesta and Zekofsky"), it alleged that "Vesta and Zekofsky failed to provide Jacobs with a safe place to work as he stood on a narrow tie beam" and that both defendants were liable in negligence. *See* Underlying Complaint ¶¶ 8–16. In Count II ("Alternative Claim for Damages as Independent Contractor Against Vesta and Zekofsky"), it advanced the same negligence claim—this time, under an alternative theory that Mr. Jacobs was working as an independent contractor, rather than an employee, when he fell. *Id.* ¶¶ 17–23. Neither claim alleged that Vesta was vicariously or jointly-and-

severally liable, and neither purported to allocate responsibility or damages between the two defendants. *See id.* ¶¶ 8–23. To the contrary, both counts averred only that "Vesta *and* Zekofsky" were negligent and liable for damages. *Id.* ¶¶ 16, 23 (emphasis added).[1]

    Mrs. Jacobs eventually entered into a Settlement Agreement with Vesta and Zekofsky, under the terms of which the state-court defendants stipulated to a consent judgement in favor of Mrs. Jacobs in the amount of $450,000. *See* Joint SOMF ¶ 13. The Settlement Agreement prevented Mrs. Jacobs from executing the judgment against Vesta or Zekofsky; instead, it authorized her to sue Vesta and Zekofsky's commercial liability insurer, MCC, as an assignee of whatever insurance claims they held against MCC based on its denial of coverage. *Id.* ¶¶ 14–16.[2] The state trial court entered a final consent judgment in favor of Mrs. Jacobs and in the amount of $450,000. *Id.* ¶ 16.

    In February 2019, Mrs. Jacobs filed this lawsuit against MCC in Florida state court, claiming that MCC had breached its contractual duties to defend and indemnify both Vesta and Zekofsky in the underlying action. *Id.* ¶¶ 17–19.[3] She sought a declaratory judgment to that effect—plus the $450,000 contemplated in the consent judgment. *Id.* MCC removed the case and, in its affirmative defenses, argued that the commercial liability policy excluded coverage for the underlying action. *Id.*

---

[1] Occasionally, the Underlying Complaint claimed that "Vesta *or* Zekofsky" created the unsafe work environment, *see* Underlying Complaint ¶¶ 12, 20, 21 (emphasis added)—though it ultimately alleged that both were negligent, and it sought damages from both "Vesta *and* Zekofsky," *id.* ¶¶ 16, 23 (emphasis added).

[2] This type of agreement—a negotiated consent judgment "entered into between an insured and a claimant in order to resolve a lawsuit in which the insurer has denied coverage and declined to defend"—is called a *Coblentz* agreement, after an Old Fifth Circuit case. *See Mid-Continent Cas. Co. v. Am. Pride Bldg. Co., LLC*, 601 F.3d 1143, 1147 n.2 (11th Cir. 2010) (citing *Coblentz v. Am. Sur. Co. of New York*, 416 F.2d 1059 (5th Cir. 1969)).

[3] MCC contracted with Vesta, but the insurance policy contained a "separation of insured" provision that extended coverage to Vesta's "executive officer" as a separate named insured. *See* Joint SOMF ¶ 2. As we explain below, we don't address whether the policy required MCC to defend or indemnify Zekofsky for the claims asserted in the Underlying Complaint.

3

¶¶ 20–22. It also contended that the Settlement Agreement was unreasonable and that it failed to allocate damages between Vesta and Zekofsky. *Id.*

## CROSS-MOTIONS FOR SUMMARY JUDGMENT[4]

In her MSJ, Mrs. Jacobs asks for summary judgment on the coverage question. Her view is that MCC had an obligation under the insurance policy to defend and indemnify *Zekofsky* (though not Vesta) in the underlying action. *See* Pl.'s MSJ at 8. The motion is for partial summary judgment because, even if she's right, she'd still have to prove (at trial) that the *Coblentz* agreement was reasonable and that it was negotiated in good faith. *Id.*

MCC's MSJ essentially mirrors the Plaintiff's—though it asks for *final* summary judgment. It argues, mainly, that Vesta *and* Zekofsky qualified as Mr. Jacobs's "statutory employer" under Florida law, and that coverage for Mr. Jacobs's accident was precluded by two exclusions in the policy—a workers'-compensation exclusion and an employer-liability exclusion. *See* Def.'s MSJ at 4. MCC also claims that Mrs. Jacobs's claims fail as a matter of law because, while the *Coblentz* agreement contemplated both covered and uncovered damages, it didn't "allocate" those damages as between Vesta and Zekofsky. *Id.* at 4, 17–20.

Because we resolve this case on this latter argument, we take a moment to review the evidence surrounding the Settlement Agreement. *First*, Mrs. Jacobs concedes that the consent judgment—like

---

[4] We required the parties to refile their cross-motions for summary judgment because Mrs. Jacobs had mistakenly stipulated to an erroneous fact. *See* Order [ECF No. 53]. The parties complied, and their renewed cross-motions are now ripe for adjudication. *See* Def.'s MSJ; Plaintiff's Response to Defendant Mid-Continent Casualty Company's Amended Motion for Final Summary Judgment ("Pl.'s MSJ Opp.") [ECF No. 62]; Mid-Continent Casualty Company's Reply to Plaintiff's Response to Mid-Continent's Amended Motion for Final Summary Judgment ("Def.'s MSJ Reply") [ECF No. 63]; *see also* Plaintiff's Renewed Motion for Summary Judgment on Issue of Duty to Defend and Coverage ("Pl.'s MSJ") [ECF No. 57]; Mid-Continent Casualty Company's Response in Opposition to Plaintiff's Renewed Motion for Final Summary Judgment on Issues of Duty to Defend and Coverage ("Def.'s MSJ Opp.") [ECF No. 61]; Plaintiff's Reply in Support of Renewed Motion for Summary Judgment on Issues of Duty to Defend and Coverage ("Pl.'s MSJ Reply") [ECF No. 64].

the Settlement Agreement that spawned it—didn't allocate damages between Vesta and Zekofsky. *See* Pl.'s SOMF Resp. [ECF No. 60] ¶ 25 ("Plaintiff does not dispute that the final Consent Judgment is unallocated."). *Second*, we have a bit of a factual dispute relating to the testimony of a crucial witness. According to MCC, Stuart Share—Mrs. Jacobs's attorney in the underlying action—testified that: (1) the $450,000 consent judgment wasn't allocated as between Vesta and Zekofsky; (2) he never discussed allocation with counsel for Vesta or Zekofsky at all during the settlement negotiations; and (3) he never sought to differentiate the liability between the two defendants *before* entering into the Settlement Agreement. *See* Def.'s SOMF [ECF No. 55] ¶¶ 25–27. Mrs. Jacobs quibbles with MCC's characterization of Mr. Share's testimony. As she points out, Mr. Share didn't say *specifically* that he hadn't talked about allocation with counsel for Vesta and Zekofsky; instead, she says, he testified only that he didn't *remember* having had any such discussions. *See* Pl.'s SOMF Resp. ¶¶ 25–26 ("Disputed that Mr. Share testified that 'he did not talk about the allocation of the final judgment between Vesta and Zekofsky.' Rather he testified he could not 'specifically recollect,' 'did not have any memory one way or another' or did not 'specifically remember.'"). But, as we'll see, this is really a distinction without a difference, because Mrs. Jacobs doesn't dispute MCC's central proposition that Mr. Share "didn't differentiate between the two of them [Vesta and Zekofsky]." *Id.* ¶ 27. *Third*, Mr. Share testified that, during the underlying action, he didn't believe that Mr. Jacobs was comparatively negligent at all. *Id.* ¶ 28. This, as we explain below, is just totally irrelevant to the outcome.

## Standard of Review

Summary judgment is appropriate when there is "no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); Fed. R. Civ. P. 56(a). In determining whether to grant summary judgment, the Court must consider "particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the

motion only), admissions, interrogatory answers, or other materials." FED. R. CIV. P. 56(c). "By its very terms, this standard provides that the mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247–48 (1986). An issue of fact is "material" if it might affect the outcome of the case under the governing law. *Id.* at 248. A dispute about a material fact is "genuine" if the evidence could lead a reasonable jury to find for the non-moving party. *Id.*

At summary judgment, the movant bears the burden of proving the absence of a genuine issue of material fact, with all factual inferences drawn in favor of the non-movant. *See e.g.*, *Allen v. Tyson Foods Inc.*, 121 F.3d 642, 646 (11th Cir. 1997). Once the movant satisfies its initial burden, the burden shifts to the non-movant to come forward with evidence that a genuine issue of material fact precludes summary judgment. *See Bailey v. Allgas, Inc.*, 284 F.3d 1237, 1243 (11th Cir. 2002); FED. R. CIV. P. 56(e). The non-movant, however, "must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). It must come forward with some affirmative evidence to support its claim. *See Anderson*, 477 U.S. at 257. "A mere 'scintilla' of evidence supporting the opposing party's position will not suffice; there must be enough of a showing that the jury could reasonably find for that party." *Walker v. Darby*, 911 F.2d 1573, 1577 (11th Cir. 1990). If the evidence advanced by the non-movant "is merely colorable, or is not significantly probative, then summary judgment may be granted." *Anderson*, 477 U.S. 242, 249–50 (internal citations omitted).

## ANALYSIS

Under Florida law, "a party seeking to recover under a *Coblentz* agreement must prove: (1) coverage; (2) a wrongful refusal to defend; and (3) that the settlement was objectively reasonable and

made in good faith." *Culbreath Isles Prop. Owners Ass'n, Inc. v. Travelers Cas. & Sur. Co. of Am.*, 151 F. Supp. 3d 1282, 1289 (M.D. Fla. 2015). As we outline below, the only real issue here today is coverage.

Mrs. Jacobs concedes that her claims against Vesta were *not* covered by MCC's policy. *See* Pl.'s MSJ at 8; *see also* Pl.'s MSJ Opp. at 9 (the plaintiff "does not dispute that . . . the workers' compensation and employer's liability exclusions would preclude coverage for the claim filed by [Mrs. Jacobs] against Vesta"). Thus, even if Mrs. Jacobs could show that MCC had a duty to indemnify Zekofsky, she would still bear the burden of proving *how much* of the $450,000 consent judgment was attributable to *his* liability, as opposed to Vesta's; otherwise, MCC would be forced to pay some amount of money for the claims Mrs. Jacobs brought against Vesta—claims as to which there was admittedly *no* coverage.

The problem, of course, is that, as Mrs. Jacobs concedes, the Settlement Agreement did *not* allocate liability between Vesta (uncovered) and Zekofsky (potentially covered). *See* Pl.'s SOMF Resp. ¶ 25 ("Plaintiff does not dispute that the final Consent Judgment is unallocated."). Indeed, Mrs. Jacobs fails to adduce *any* evidence from which a jury could allocate her damages as between the two state-court defendants. The only evidence we have about the Settlement Agreement (besides the agreement itself) is the testimony of Mr. Share, who, *at best*, couldn't remember *even discussing* the question of allocation with counsel for Vesta and Zekofsky. *Id.* ¶¶ 25–26. That's not evidence of anything. *See, e.g.*, *RLI Ins. Co. v. Alfonso*, 2021 WL 430720, at *24 (S.D. Fla. Feb. 8, 2021) (Altman, J.) ("The mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient; there must be evidence on which the jury could reasonably find for the plaintiff." (cleaned up)). What's worse, as Mrs. Jacobs admits, Mr. Share didn't even attempt to differentiate the degree of liability between the two defendants in his own review of the case. *Id.* ¶ 27. As we've said, no one else testified about the Settlement Agreement, and there aren't any other facts in the record regarding Zekofsky's relative culpability *vis-à-vis* Vesta's. There's thus no evidence from which a reasonable jury could properly apportion Mrs. Jacobs's damages. Without any such evidence, Mrs. Jacobs has failed to carry her

burden, and MCC is entitled to summary judgment. *See, e.g., Highland Holdings, Inc. v. Mid-Continent Cas. Co.*, 687 F. App'x 819, 820 (11th Cir. 2017) (holding, at summary judgment, that an insurer owed no duty to indemnify its insured for a settlement agreement because the insured "could not prove how much it paid to settle any claims covered under its commercial general liability insurance policy"); *see also S. Cent. Educ. Risk Mgmt. Program v. Star Ins. Co.*, 2018 WL 11353289, at *3 (S.D. Fla. Dec. 18, 2018) (Rosenberg, J.) ("Under Florida law, it is well-settled that the party seeking coverage for a settlement has the burden of proving that the settlement is covered under the insurance policy. If a lawsuit contains both covered and non-covered claims and damages, Florida law clearly requires the party seeking recovery to allocate any settlement amount between covered and noncovered claims. The insured's inability to allocate precludes recovery against the insurer." (cleaned up)); *Bradfield v. Mid-Continent Cas. Co.*, 143 F. Supp. 3d 1215, 1245 (M.D. Fla. 2015) (collecting cases and explaining that "Florida law clearly requires the party seeking recovery . . . to allocate any settlement amount between covered and noncovered claims").[5]

Mrs. Jacobs tries to avoid this result by distinguishing MCC's cases. She notes, for instance, that those cases all involved multiple *claims* against one insured—only some of which fell within coverage. That's different from our case—she says—because MCC's policy covered *all* (not just some)

---

[5] We take no position on whether, at this preliminary stage of the case, Mrs. Jacobs would need to offer an exact numerical allocation, or whether (instead) she could have survived summary judgment by proffering *some* evidence of Vesta and Zekofsky's relative liabilities. Mrs. Jacobs doesn't cite—nor could we find—a case in which a *Coblentz* plaintiff survived summary judgment by creating a genuine issue of material fact, not as to the *fact* of allocation, but as to the precise *split* of liability (*e.g.*, by claiming that the allocation between covered and uncovered claims was, say, 60%-40%—contra the insurer's view that the split was actually 40%-60%). Even in that scenario, though, the *Coblentz* plaintiff would have to offer *some* evidence from which a jury could determine the proper allocation. *Cf. A&E Adventures LLC v. Intercard, Inc.*, 2021 WL 1165244, at *12–14 (S.D. Fla. Mar. 26, 2021) (Altman, J.) (holding that a defendant was entitled to summary judgment when the plaintiff failed to proffer evidence from which a "reasonable jury" could "quantify damages," and explaining that it was insufficient for the plaintiff to assert the "mere conclusion," at the "highest level of abstraction," that damages *could be* calculated *somehow* (citing *Anderson v. Am. Family Ins. Co.*, 800 F. App'x 814, 816 (11th Cir. 2020))). Of course, our case is easier because Mrs. Jacobs hasn't come close to doing even that.

of her claims against Zekofsky. *See* Pl.'s MSJ Opp. at 15–16 ("In sharp contrast to the cases relied upon by MCC, in this case the Court does not face a situation where the insured seeking coverage, Zekofsky, settled multiple claims against him, only some of which are covered under the MCC Policy."). On close inspection, however, Mrs. Jacobs's distinction falls apart. She, after all, has asserted four claims, not two: two negligence claims against Zekofsky and two negligence claims against Vesta. That she's decided to lump these four claims into two causes of action cannot make the least bit of difference to the outcome because she concedes that two of these claims—the ones against Vesta—are *uncovered*. Viewed this way, our case is really on all-fours with all the other decisions MCC has cited. That's because Mrs. Jacobs settled four claims—two potentially covered, two admittedly uncovered—in exchange for one consent judgment in the amount of $450,000. *See* Joint SOMF ¶ 16. But she's asking MCC to indemnify her for *the entire* $450,000, *id.* ¶ 19 ("The Complaint seeks both a declaration that MCC breached its duty to defend and indemnify Vesta and Zekofsky in the underlying action and recovery of damages in the amount of $450,000.00 pursuant to the Consent Judgment.")—even though it's entirely possible (likely even) that Vesta (uncovered) is responsible for anywhere between 1 and 100% of Mrs. Jacobs's damages. At the very least, there's no evidence in the record that Vesta can only be responsible for 0%. And, if Vesta is responsible for at least 1% of the damages, then Mrs. Jacobs would be seeking to compel MCC to cover losses that *aren't* covered by the policy. For obvious reasons, the law doesn't allow this. Again, it was up to Mrs. Jacobs to allocate the Settlement Agreement as between the covered claims (against Zekofsky) and the uncovered claims (against Vesta). Since she's failed to do this, MCC is entitled to summary judgment.

Perhaps recognizing this, Mrs. Jacobs tries to recast the Underlying Complaint as having alleged that *only* Zekofsky was negligent—and that Vesta was simply *vicariously* liable as Zekofsky's employer. *See* Pl.'s MSJ Opp. at 17. But, as MCC points out, this conveniently revisionist reading of the Underlying Complaint finds no support in the document itself. In fact, the word "vicarious" never

even appears in that pleading, *see generally* Underlying Complaint, and the document contains no other words from which we can plausibly infer that it in any way attempted to advance that cause of action. To the contrary, the Underlying Complaint is pellucid in alleging that *both* Vesta and Zekofsky created the unsafe working conditions that led to Mr. Jacobs's injuries. *See generally id.* ¶¶ 12–23. In any event, we needn't delve too deeply here because, under Florida law, a plaintiff cannot sustain a vicarious-liability claim unless she pleads it explicitly *in a separate count* of her complaint. *See Gen. Asphalt Co. v. Bob's Barricades, Inc.*, 22 So. 3d 697, 699 (Fla. 3d DCA 2009) ("Florida law is clear that in order to pursue a vicarious liability claim, the claimant must specifically plead it as a separate cause of action." (citing *Goldschmidt v. Holman*, 571 So. 2d 422 (Fla. 1990))); *accord Amerisure Ins. Co. v. Seneca Specialty Ins. Co.*, 2020 WL 3317035, at *5 (S.D. Fla. June 18, 2020) (Moreno, J.). Since even a cursory glance at the Underlying Complaint reveals no such vicarious-liability count, we can safely conclude that Mrs. Jacobs charged Vesta with active, not vicarious, negligence.

In her last-ditch effort to survive summary judgment, Mrs. Jacobs builds (and then tears down) three strawmen MCC never relies on—all related to a position MCC never takes: namely, that Zekofsky could've raised certain affirmative defenses that would have been unavailable to Vesta. *See* Pl.'s MSJ Opp. at 18 ("[A]t some point MCC may argue the unapportioned judgment against Vesta and Zekofsky is unenforceable because, pursuant to [FLA. STAT.] § 440.11(1)(a), in the underlying tort action Zekofsky had certain affirmative defenses available to Jacobs' suit which were unavailable to Vesta."). Because MCC doesn't make this argument—which appears to be beside the point anyway— we'll spend very little time rejecting the three counter-arguments Mrs. Jacobs advances against it.

*First*, Mrs. Jacobs says that the "distinction between Zekofsky's and Vesta's available [affirmative] defenses does not affect the issue of coverage for the judgment entered against Zekofsky because unless the workers' compensation and employee's liability exclusions apply, Zekofsky is covered." *Id.* But, as we've already explained, even if we assume that the claims against Zekofsky *were*

entirely covered, the fact remains that the Settlement Agreement doesn't account for the admittedly *uncovered* claims against Vesta. And that's really the heart of the matter. *Second*, Mrs. Jacobs points to Mr. Share's testimony that, in his opinion, Mr. Jacobs wasn't comparatively negligent. *See* Pl.'s MSJ Opp. at 18–19. But it's hard to see how Mr. Jacobs's comparative negligence has any bearing on the relative culpability of the two defendants. After all, comparative negligence aside, one defendant could have been 100% liable, or 90%, or each could have been equally responsible. The point is we'll never know because neither the Settlement Agreement nor anyone else tells us. And, since the burden of quantifying the allocation fell squarely on Mrs. Jacobs, this evidentiary lacuna redounds decidedly to her detriment. *Third*, Mrs. Jacobs contends that "any argument by MCC" regarding affirmative defenses "would be a challenge to the reasonableness *vel non* or good faith of the [Settlement Agreement], an argument which was not raised in MCC's [MSJ] and an issue which courts generally find presents a question of fact for the trier of fact." Pl.'s MSJ Opp. at 19 (citing *Garcia v. GEICO Gen. Ins. Co.*, 2012 WL 12859819, at *6 (S.D. Fla. Dec. 26, 2012) (Altonaga, J.)). It's true that reasonableness and good faith aren't at issue here. But that's neither here nor there: MCC is entitled to summary judgment, not because the Settlement Agreement was unfair or unreasonable, but because Mrs. Jacobs has failed to meet her burden of apportioning her damages as between the two state-court defendants.

***

In the end, Mrs. Jacobs had to show that there was coverage for the *Coblentz* claims she is here pursuing. *See, e.g.*, *Culbreath Isles Prop. Owners*, 151 F. Supp. 3d at 1289 ("In Florida, a party seeking to recover under a *Coblentz* agreement must prove: (1) coverage; (2) a wrongful refusal to defend; and (3) that the settlement was objectively reasonable and made in good faith."). Because she's failed to do that, her claims fail.[6]

---

[6] Since we've granted MCC's MSJ on the question of allocation, we needn't address its other arguments for dismissal. *See* Def.'s MSJ at 6–16.

After careful review, the Court hereby **ORDERS AND ADJUDGES** as follows:

1. MCC's Amended Motion for Final Summary Judgment and Incorporated Memorandum of Law [ECF No. 56] is **GRANTED**.

2. The Plaintiff's Renewed Motion for Summary Judgment on Issue of Duty to Defend and Coverage [ECF No. 57] is **DENIED as moot**.

3. Pursuant to FED. R. CIV. P. 58, final judgment will be entered separately.

4. The Clerk of Court shall **CLOSE** this case.

5. All other pending motions are **DENIED as moot**, all other deadlines are **TERMINATED**, and any remaining hearings are **CANCELED**.

**DONE AND ORDERED** in Fort Lauderdale, Florida, this 8th day of September 2021.

_____
**ROY K. ALTMAN**
**UNITED STATES DISTRICT JUDGE**

cc:    counsel of record